UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANET AKWELEY TETTEH, </br></br>    Plaintiff, </br></br>    v. </br></br>ANTHONY BLINKEN, </br></br>    Defendant. | Case No. 22-cv-02208 (APM) |

**MEMORANDUM OPINION AND ORDER**

**I.**

Plaintiff Janet Akweley Tetteh, a 2022 diversity visa selectee, asks the court to enter a preliminary injunction requiring Defendant to schedule her for an interview with a consular officer before September 30, 2022, the end of the fiscal year. Pl.'s Mot. for a Prelim. Inj. or Summ. J. in the Alternative, ECF No. 4 [hereafter Pl.'s Mot.], Pl.'s Mem. of P. & A. in Supp. of Pl.'s Mot., ECF No. 4-1 [hereinafter Pl.'s Mem.]. She seeks injunctive relief on one primary ground: the State Department, acting through the U.S. Embassy in Accra, Ghana, has unreasonably delayed in scheduling her for an interview, in violation of 5 U.S.C. § 706(1). *See* Pl.'s Mem. at 11–21. Because Plaintiff has not shown a substantial likelihood of success on that claim, or on her alternative claim of agency action unlawfully withheld, her motion is denied. *See Greater New Orleans Fair Hous. Action Ctr. v. Dep't of Hous. & Urb. Dev.*, 639 F.3d 1078, 1088 (D.C. Cir. 2011) ("[W]hen a plaintiff has not shown a likelihood of success on the merits, there is no need to consider the remaining [preliminary injunction] factors.").

II.

Before reaching the merits, the court must address its jurisdiction. Defendant moves to dismiss on the ground that Plaintiff lacks standing. *See* Def.'s Mot. to Dismiss Pl.'s Compl., ECF No. 8, Def.'s Mem. of P. & A. in Support of Def.'s Mot., or in the Alternative, for Summ. J. in Part and Def's Opp'n to Pl.'s Mot. for Prelim. Inj., ECF No. 8-1 [hereinafter Def.'s Opp'n], at 17–21. The court disagrees. In evaluating standing, the court must assume the merits of Plaintiff's unreasonable delay claim. *See Est. of Boyland v. Dep't of Agric.*, 913 F.3d 117, 123 (D.C. Cir. 2019). That means the court here must operate from the premise that the State Department has unreasonably delayed in granting her a diversity visa interview. With that assumption in place, it is easy to see that the denial of a procedural right—the interview—necessarily will result in the impairment of a concrete interest—securing a diversity visa—because a diversity visa will not issue absent an in-person interview before a consular officer. *See* 8 U.S.C. § 1202(e) (stating "each application for an immigrant visa shall be signed by the applicant in the presence of the consular officer"). And once an applicant for an immigrant visa is before a consular officer, if the applicant "meets the criteria to obtain one, the State Department 'shall' issue him a diversity visa." *Almaqrami v. Pompeo*, 933 F.3d 774, 777 (D.C. Cir. 2019) (quoting 8 U.S.C. § 1153(c)). Defendant offers no reason why Plaintiff has not met the criteria for a diversity visa. Therefore, denying her an interview is a de facto denial of a diversity visa. She thus has standing.

III.

A.

Plaintiff has standing to sue, but she falters on the merits. An unreasonable delay claim is governed by the six so-called *TRAC* factors. *See In re People's Mojahedin Org. of Iran*, 680 F.3d

832, 836–37 (D.C. Cir. 2012) (citing *Telecomms. Rsch. & Action Ctr. v. FCC (TRAC)*, 750 F.2d 70, 79 (D.C. Cir. 1984)).  Those factors are:

> (1) The time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*Id.* (citation omitted).  "In each case, the central question is 'whether the agency's delay is so egregious as to warrant mandamus.'"  *Id.* at 837. (citation omitted).

Here, *TRAC* factors one and two are at most neutral when it comes to an individual diversity visa applicant.  It is true that this court previously has held that *TRAC* factors one and two favor diversity visa selectees, but that holding was in the context of a complete shut-down in diversity visa processing based on a legal error by the State Department.  *See Gomez v. Trump*, 485 F. Supp. 3d 145, 196 (D.D.C. 2020) (observing in the context of *TRAC* factors one and two that "the State Department could [not] effectively extinguish the diversity program for a given year by simply sitting on its hands and letting all pending diversity visa applications time out"); *Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203, 236 (D.D.C. 2021) (similarly stating as to *TRAC* factors one and two, "regardless of the Department's competing priorities, it was plainly unreasonable for it to stop processing visas for five months of FY 2021 based on an erroneous interpretation of the law").  The *TRAC* analysis is fact specific.  *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (stating that "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts

3

and circumstances before the court"). And this case, unlike *Gomez* and *Filzapovich*, involves a single plaintiff who is not alleging a legal error. An individual selectee is not guaranteed an interview, let alone an interview by the end of the fiscal year. So, *TRAC* factors one and two do not favor Plaintiff in the same way they did for the plaintiffs in those other cases.

*TRAC* factors three and five favor Plaintiff. As noted, the non-scheduling of an interview is tantamount to denial of a diversity visa. So, the claimed unreasonable delay here implicates Plaintiff's "human health and welfare" and substantially prejudices her interest in immigrating to this country. *See Gomez*, 485 F. Supp. 3d at 196.

*TRAC* factor four weighs heavily in favor of Defendant and is, for all intents and purposes, dispositive. Even when all other TRAC factors lie in a plaintiff's favor, the D.C. Circuit has refused to grant relief "where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Mashpee*, 336 F.3d at 1100 (alterations omitted). That is precisely the relief Plaintiff seeks here. By asking for an immediate interview, Plaintiff asks to be put ahead of other diversity selectees who similarly are waiting for an interview at the U.S. Embassy in Accra. *See* Def's Opp'n, Ex. D, ECF No. 8-7, ¶ 18 (reporting that, as of August 11, 2022, of the 1,090 FY2022 diversity visa cases assigned to the U.S. Embassy in Accra, "568 cases have a lower regional rank order than Plaintiff's case" and 628 cases "are before Plaintiff's case in the scheduling order" for interviews). And, even if the court were to accept that the U.S. Embassy in Accra has been slow in processing diversity visas, as Plaintiff contends, that slowdown would affect all selectees equally who are assigned to Accra. Granting Plaintiff the relief she seeks would move her ahead of others who have equally been prejudiced by the Embassy's alleged delay.

Finally, the sixth *TRAC* factor favors neither party.  Although Plaintiff asserts that Defendant has not acted in good faith in processing diversity visas out of Accra, the facts of the 2022 diversity visa program as a whole tell a different story.  As of August 21, 2022, consular officers worldwide had issued 38,042 diversity visas.  *See* Notice of Updated Processing and Interview Appointment Scheduling Statistics, *Jabbour v. Blinken*, No. 22-cv-00451-APM (D.D.C.), ECF No. 16, at 2.  Additionally, as of August 22, 2022, the State Department "had scheduled interviews for 33,840 DV cases, associated with 70,443 prospective applicants."  *Id.*  Thus, if the State Department does not exhaust the diversity visa allotment of 55,000 for fiscal year 2022, it will come very close.  That output belies any notion that the State Department has acted in bad faith.

Accordingly, the court finds that Plaintiff has not demonstrated a substantial likelihood of success on her unreasonable delay claim.

**B.**

Plaintiff also advances the separate claim that the State Department has "unlawfully withheld discreet, nondiscretionary action on [Plaintiff's] application."  Pls.' Mem. at 21.  But Plaintiff cites no statute or regulation that requires the State Department to grant an individual diversity visa selectee an interview, or guarantees such interview.  Plaintiff points to 8 U.S.C. § 1202(b), Pls.' Mem. at 21, which this court previously has said imposes "a specific and nondiscretionary obligation to review and adjudicate [] immigrant visa applications." *Filazapovich*, 560 F. Supp. 3d at 235.  But the court made that observation in the context of the State Department's complete cessation of processing diversity visa applications.  *See id.* at 234–35.  The court has never said that the State Department has a duty to process and adjudicate any particular visa application.  The program does not work that way.  *See Gomez*, 485 F. Supp. 3d at

196 ("To be clear, there is no statutory requirement that every available diversity visa be issued each year."). Thus, having failed to identify "a *discrete* agency action that [the State Department] is *required* to take," Plaintiff's "unlawfully withheld" claim cannot be sustained. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

### IV.

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction, ECF No. 4, is denied.

Dated: September 26, 2022

Amit P. Mehta
United States District Court Judge